1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

10

11 RONNIE LEA BYRD,                                    Case No. 1:17–cv–01619–SKO

Plaintiff,

12

v.                                                              ORDER ON PLAINTIFF'S SOCIAL
                                                                     SECURITY COMPLAINT
13
NANCY A. BERRYHILL,

14 Acting Commissioner of Social Security,

15                    Defendant.                           (Doc. 1)

16 _____/

17

18 ## I.  INTRODUCTION

19        Plaintiff Ronnie Lea Byrd ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications

21 for Supplemental Security Income ("SSI"), and Disabled Widow's Insurance ("DWB") benefits

22 under Titles XVI and II of the Social Security Act.[1]  The matter is currently before the Court on

23 the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

24 Oberto, United States Magistrate Judge.[2]

25

26 _____

27 [1] As applicable here, widow's insurance benefits are a survivor's benefit based on the widow's disability and the deceased person's insured status.  42 U.S.C. § 402(e)(1)(B)(ii).  The widow need not be an insured in her own right, but she does need to be "disabled."  *See Aarestad v. Comm'r of Soc. Sec. Admin.*, 450 Fed. Appx. 603, 604 (9th Cir. 2011).

28 [2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 4, 6.)

## II. BACKGROUND

On April 1, 2014, Plaintiff filed applications for DWB and SSI, alleging that she became disabled on July 1, 2013 due to a neck injury, carpal tunnel syndrome, and arthritis. (Administrative Record ("AR") 197–205, 219.) Plaintiff was born on May 14, 1957, and was 55 years old on the date she filed her applications. (AR 197.) Plaintiff has a high school education, and previously worked as a cashier for about three months in 1988, a house cleaner for about three months in 1990, and an in-home caregiver in 2008. (AR 220.)

### A. Relevant Medical Evidence[3]

#### 1. Emergency Department – Community Medical Centers

On August 4, 2013, Plaintiff presented to the emergency department at Community Medical Centers complaining of right foot pain after hitting her foot with a door and someone stepping on it. (AR 426.) Plaintiff was in no distress and exhibited no neurological defects, but her right foot was tender. (AR 426–28.) The physician's assistant treating Plaintiff noted she was stable and recommended she follow up with her primary care doctor. (AR 428.)

Plaintiff returned to the emergency department on October 31, 2013, complaining of a cough and sore throat. (AR 429.) Plaintiff was in no distress and all neurological functions were intact. (AR 429.) The doctor refilled Plaintiff's prescription for albuterol and discussed the possibility of a chest x-ray, but Plaintiff declined the x-ray. (AR 429.)

#### 2. Hipolito Mariano, M.D.

On June 5, 2014, Plaintiff presented to Dr. Mariano for a referral to a neurologist.[4] (AR 464.) Following the appointment, Dr. Mariano ordered an x-ray of Plaintiff's left knee, which revealed no abnormal findings, except for minimal degenerative medial joint space narrowing. (AR 508.) On July 7, 2014, Plaintiff returned to Dr. Mariano complaining of a headache, stomachache, and bloating, and Dr. Mariano appears to note tenderness of Plaintiff's cervical spine. (AR 463.) Dr. Mariano ordered an x-ray of Plaintiff's cervical spine, which revealed a

---

[3] As Plaintiff's assertions of error are limited to the ALJ's consideration of Dr. Hipolito Mariano, M.D.'s opinion, and the ALJ's adverse credibility determination against Plaintiff, only evidence relevant to those arguments is set forth in this Order.

[4] The Court notes that Dr. Mariano's treatment notes are generally illegible, but the Court's summary is consistent with the facts as summarized in the ALJ's decision and Plaintiff's opening brief.

reversal of the normal lordotic curve (i.e., reversal of the normal inward curvature of the lumbar and cervical spine), degenerative changes with disc space narrowing at multiple levels, anterior osteophyte formation and bilateral foraminal encroachment at the C3 to C4 through C6 to C7 levels, mild left C4 to C5 facet arthropathy, and a 1.7 mm anterior subluxation of C2 on C3. (AR 502.) The x-ray report also noted the degenerative changes were progressive from July 2007. (AR 502.)

On September 11, 2014, Plaintiff returned to Dr. Mariano for a follow up appointment related to a stomach ulcer and Dr. Mariano again appears to note tenderness in her cervical spine. (AR 461.) Dr. Mariano does not appear to note cervical spine tenderness at Plaintiff's appointments on October 3 or October 16, 2014, but he does appear to note tenderness on March 2 and May 22, 2015. (AR 455, 458–60.) Dr. Mariano ordered an MRI of Plaintiff's cervical spine, which was performed on April 30, 2015, and compared the images against those of Plaintiff's cervical spine from 2009. (AR 482.) The MRI revealed no new findings at the C5 to C6 and C6 to C7 levels, but revealed mild to moderate disc height loss with a 2mm diffuse disc osteophyte complex at the C3 to C4 and C4 to C5 levels. (AR 484.)

On October 13, 2015, Dr. Mariano completed a Disability Impairment Questionnaire, evaluating Plaintiff's ability to work. (AR 524–28.) Dr. Mariano opined Plaintiff could sit four hours in a normal eight-hour day and stand and/or walk four hours in a normal eight-hour day. (AR 526.) According to Dr. Mariano, Plaintiff could sit for one to two hours at a time before she needed to get up and not sit again for fifteen minutes. (AR 526.) Dr. Mariano further opined Plaintiff could lift and carry up to five pounds occasionally, but never more than five pounds. (AR 526.) Dr. Mariano opined Plaintiff had significant limitations in reaching, handling, and fingering, including rarely or never grasping, turning, and twisting objects; rarely or never using her hands or fingers for fine manipulation; and rarely or never using her arms for reaching. (AR 527.) Finally, Dr. Mariano opined Plaintiff's pain symptoms would frequently interfere with her attention and concentration and she would miss work more than three days a month due to her pain. (AR 527–28.)

On April 14, 2016, Plaintiff returned to Dr. Mariano, complaining of left ankle pain after a fall the month before.  (AR 521.)  Upon physical examination, Dr. Mariano noted decreased range of motion and tenderness in Plaintiff's left ankle as well as tenderness and spasms in Plaintiff's cervical muscles.  (AR 521.)  Dr. Mariano's physical examination revealed otherwise normal findings with no back spasms or tenderness.  (AR 521.)  Dr. Mariano recommended Plaintiff continue her medication regime for her chronic neck pain and referred Plaintiff to an orthopedic surgeon for her ankle.  (AR 522.)

**3.  Steven Stoltz, M.D.**

On June 17, 2014, Dr. Stoltz performed a consultative examination of Plaintiff.  (AR 444–49.)  Plaintiff reported "a history of vague neurological issues and headaches" and Dr. Stoltz noted that Plaintiff was a "poor historian" of her medical history and there were no medical records available for him to review.  (AR 444.)  Plaintiff also reported that she previously had bilateral carpal tunnel release surgery, but she continued to have some swelling and difficulty using her right hand.  (AR 444.)

Upon physical examination, Dr. Stoltz noted Plaintiff's grip strength was 20-25-20 in her right hand and 30-30-30 in her left hand.  (AR 446.)  Range of motion in her neck, lumbar spine, knees, ankles, wrists, hips, elbows, and shoulders, were all within normal limits, and there was no tenderness in any joints.  (AR 446–448.)  Plaintiff's strength was normal in all extremities and her gait was normal.  (AR 448.)

Dr. Stoltz diagnosed Plaintiff with "vague neurological symptoms," a "history of bilateral carpal tunnel release," and a "possible thyroid condition."  (AR 448.)  Dr. Stoltz noted this was a difficult case because of Plaintiff's vague symptoms and the absence of any medical records, but based on his examination, he concluded she did not have any functional limitations.  (AR 449.)  Dr. Stoltz also noted it would be reasonable for a board-certified neurologist to examine Plaintiff given the lack of medical records.  (AR 449.)

**4.  Michael Medeiros, M.D.**

On March 19, 2015, Plaintiff presented to Dr. Medeiros for a movement disorder consultation.  (AR 515.)  Plaintiff reported that her hands were getting weaker and she felt pain

in her entire arm from the shoulder down.  (AR 515.)  Dr. Medeiros noted normal coordination and gait, and normal strength and tone in her upper and lower extremities except for giveaway weakness in both triceps and atrophy in the muscles in the hand that flex the thumb.  (AR 517.)  Dr. Medeiros ordered an electromyography (EMG) of both arms, which tests the health of muscles and nerves that control the muscles, and an MRI of Plaintiff's cervical spine.  (AR 517.)  The MRI, performed on May 28, 2015, revealed a normal cervical cord with moderate to severe bilateral foramina stenosis, but no images were available for comparison.[5]  (AR 513.)  When Dr. Medeiros reviewed the MRI with Plaintiff at her appointment on June 18, 2015, Dr. Medeiros opined the MRI showed possible radiculopathy at the C5 through C7 levels, and indicated he would refer Plaintiff to a spine specialist.  (AR 512.)  The EMG revealed signs suggestive of mild right carpal tunnel syndrome with no evidence of polyneuropathy, myopathy or radiculopathy.  (AR 520.)

###### 5.      State Agency Physicians

On July 21, 2014, G.W. Bugg, M.D., a Disability Determination Services medical consultant, reviewed the medical evidence of record and concluded Plaintiff's impairments were non-severe and that she needed "no more than slight limitations."  (AR 99.)  Plaintiff requested reconsideration of Dr. Bugg's opinion, and on March 3, 2015, another Disability Determination Services medical consultant, M. Pham, M.D., performed an independent review of Plaintiff's medical records and affirmed Dr. Bugg's opinion.  (AR 111.)

### B.      Administrative Proceedings

The Commissioner denied Plaintiff's application for DWB and SSI initially on July 22, 2014, and again on reconsideration on March 4, 2015.  (AR 94–101, 104–13.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 149–51.)  Plaintiff appeared with counsel at the hearing on December 7, 2016, and testified before an ALJ as to her alleged disabling conditions.  (AR 18; *see generally* AR 36–61.)  A vocational expert also testified at the hearing.  (AR 57–60.)

---

[5] The Court notes that the MRI requested by Dr. Medeiros states no images were available for comparison, but Dr. Mariano ordered an MRI one month earlier and the images from Dr. Mariano's April 2015 MRI were compared to a 2009 MRI of Plaintiff's cervical spine.  (*See* AR 482–85.)

### 1.    Plaintiff's Testimony

Plaintiff testified that she is unable to work because of pain in her neck and arms.  (AR 41.)   According to Plaintiff, she has experienced pain in her neck for two years, which has increased over the last year. (AR 41.)   Her neck hurts all the time; the pain goes down into both arms and recently she has felt the pain in her left torso.  (AR 42, 53.)  She has experienced the pain in her arms for about a year and the pain in her right arm is worse than the pain in her left arm.  (AR 42.)

According to Plaintiff, her doctor told her she needs surgery on her neck, but she feels like she is "right back to square one" with all the medical testing she is undergoing.  (AR 42–43.)  Plaintiff takes medications for her pain, including Vicodin, which "kind of worked" in the past, but have not been effective for the last eight months to a year.  (AR 43–44.)  She told her doctor that the medication was not effective, but her doctor "just wants [her], to just, see what happens" and Plaintiff does not want to try anything else because "it just don't work."  (AR 56.)  Plaintiff also testified she has tried physical therapy in the past, but it made the pain in her neck worse.  (AR 55.)

Plaintiff testified she is not sure if she could lift more than five pounds and has difficulty gripping objects and using her hands and fingers.  (AR 47–48.)  For example, she cannot hold small objects like keys or fasten buttons on a shirt, but she can hold a toothbrush to brush her teeth.  (AR 48.)  She has problems showering and washing her hair because it hurts to reach her arms over her head, and does not do dishes because it hurts to reach her arms out in front of her. (AR 48–49.)  She does not drive and does not think she is physically capable of driving because she cannot hold the steering wheel.  (AR 49.)  She does not cook or clean because she does not trust her hands and her boyfriend helps her eat by cutting up her food and hand feeding her, if necessary.  (AR 51–52.)  She lives with her boyfriend and his sister, who do "pretty much everything" for Plaintiff including the laundry, driving her places, and cleaning.  (AR 52–53.)

Plaintiff can stand for a half-hour before she needs to sit down because "everything just starts hurting."  (AR 50.)   According to Plaintiff, she began experiencing pain in her legs and feet over the last three months and she falls once a month because her legs and lower back give

out.  (AR 50–51.)  She has been falling for two to three years, but she falls more often recently.  (AR 50–51.)  She has to lie down two to three times a day because her head and neck hurt.  (AR 53.)  When she lays down, she has a special pillow that supports the back of her head, which helps make her more comfortable.  (AR 54.)  She passes time by watching "a lot of TV" and sometimes reading.  (AR 54.)

## 2. Vocational Expert's Testimony

The ALJ asked the Vocational Expert ("VE") two hypothetical questions during the hearing.  First, the ALJ asked the VE to consider a person of Plaintiff's age and education, with no prior relevant work experience, who is limited to simple, repetitive tasks, and unskilled work.  (AR 57.)  This person would have a medium[6] residual functional capacity ("RFC")[7] and be able to frequently use her hands for fingering and grasping.  (AR 57.)  The ALJ then asked the VE whether there would be any work for such a person in the national economy.  (AR 57–58.)  The VE testified that such a person could perform the following medium, unskilled work: (1) retail store bagger, Dictionary of Operational Titles ("DOT") code 920.687-014, (2) hospital cleaner, DOT code 323.687-010, and (3) counter supply worker, DOT code 319.687-010.  (AR 58.)

The ALJ then asked the VE a second hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical, but who is limited to light work.[8]  The VE testified that such a person could perform the following light, unskilled work: (1) cashier II, DOT code 211.462-010; (2) sales attendant, DOT code 299.677-010; and (3) cafeteria attendant, DOT code 311.677-010.  (AR 59.)

Plaintiff's counsel also asked the VE two hypothetical questions.  First, Plaintiff's counsel asked the VE whether his answer would change if the individual in the first hypothetical were

---

[6] Medium work involves lifting no more than fifty pounds with frequent lifting or carrying of objects weighing up to twenty-five pounds.  20 C.F.R. §§ 404.1567(c), 416.967(c).  It also requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" and sitting the remainder of the day.  Social Security Ruling 83-10 (Jan. 1, 1983).

[7] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule.  Social Security Ruling 96-8p (July 2, 1996).

[8] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).

limited to only occasional handling and grasping. (AR 59.) The VE responded that there would be no work for such an individual. (AR 59.) Second, Plaintiff's counsel asked the VE whether there would be any work for an individual that missed two to three days per month. (AR 60.) The VE responded that there would be no work for such an individual. (AR 60.)

**C.      The ALJ's Decision**

In a decision dated February 13, 2017, the ALJ found that Plaintiff was not disabled. (AR 18–27.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 416.920 and 404.1520. (AR 20–27.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, July 1, 2013. (AR 20.) At Step Two, the ALJ found that Plaintiff was severely impaired by her arthritis. (AR 20.) However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 23.) The ALJ determined that Plaintiff had the RFC "to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." (AR 23.)

In formulating the RFC, the ALJ gave minimal weight to the opinion of treating physician Dr. Mariano because it was inconsistent with the record, and it appeared to be based on Plaintiff's subjective complaints rather than objective findings. (AR 25–26.) The ALJ gave some weight to the opinions of consultative examiner Dr. Stoltz and the state agency physicians, but did not give them more weight because additional evidence received at the hearing showed Plaintiff was more limited than they opined. (AR 25.) The ALJ also found Plaintiff's testimony not entirely credible because her testimony was undermined by objective medical evidence in the record, Plaintiff's record of conservative treatment, and her activities of daily living. (AR 24–25.)

The ALJ noted that the transferability of Plaintiff's job skills was not an issue because Plaintiff did not have any past relevant work (Step Four). (AR 26.) However, given her RFC, the ALJ concluded Plaintiff was not disabled because she could perform a significant number of other jobs in the local and national economies (Step Five). (AR 26–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 2, 2017. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the

Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed a complaint before this Court on December 4, 2017, seeking review of the ALJ's decision. (Doc. 1.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

As applicable here, to qualify for DWB, Plaintiff must be fifty years of age and disabled within seven years of her husband's death.[9] 20 C.F.R. § 404.335(c). An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical

---

[9] The parties do not dispute that Plaintiff is entitled to DWB if she was disabled prior to October 5, 2018.

and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, before considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity, which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. *Id*. §§ 404.1520(e), 416.920(e). Next, at Step Four, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 404.1520.

## V. DISCUSSION

In her Opening Brief, Plaintiff contends the ALJ erred in two respects: (1) the ALJ failed to articulate sufficient reasons for discrediting Dr. Mariano's opinion resulting in an erroneous RFC assessment; and (2) the ALJ failed to articulate clear and convincing reasons for discrediting

Plaintiff's subjective complaints.[10]  (*See generally* Doc. 10 at 12–20.)  Defendant responds that the ALJ properly weighed the conflicting evidence and medical opinions regarding Plaintiff's physical and mental limitations, and provided sufficient reasons for discrediting Plaintiff's subjective complaints.  (Doc. 17 at 4–13.)

## A.    The ALJ's Consideration of Plaintiff's Credibility.

### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, the ALJ must engage in a two-prong analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1035–36).  Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  *Id.*

As to the second prong, "[t]he clear and convincing standard is 'not an easy requirement to meet' and it 'is the most demanding standard required in Social Security cases.'"  *Wells v. Comm'r of Soc. Sec.*, No. 1:17–cv–00078–SKO, 2017 WL 3620054, at *6 (E.D. Cal. Aug. 23, 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).  "General findings are insufficient" to satisfy this standard.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)

---

[10] Plaintiff also asserts in a footnote that this Court should remand the case pursuant to the U.S. Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause.  According to Plaintiff, the ALJ's decision is subject to remand because the ALJ who decided the case was "not constitutionally appointed at the time of the decision." (Doc. 10 at 5–6 fn. 6.)  However, "to the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during [her] administrative proceedings." *Samuel F. v. Berryhill*, No. CV 17-7068-JPR, 2018 WL 5984187, at *2 (C.D. Cal. Nov. 14, 2018) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (plaintiff forfeits issues not raised before ALJ or Appeals Council) and *Davidson v. Comm'r of Soc. Sec.*, No. 2:16-cv-00102, 2018 WL 4680327 (M.D. Tenn. Sept. 28, 2018) (rejecting *Lucia* challenge because plaintiff did not raise it during administrative proceedings).

(citation omitted). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see, e.g.*, *Vasquez*, 572 F.3d at 592 ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### 2. The ALJ Properly Discounted Plaintiff's Subjective Complaints.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible for several reasons. Specifically, the ALJ found Plaintiff's testimony was undermined by 1) the objective medical evidence in the record, 2) Plaintiff's record of conservative treatment, and 3) inconsistencies between her daily activities and testimony. (AR 24–25.)

#### a. Objective Medical Evidence

The ALJ did not err in finding that the objective medical evidence fails to support Plaintiff's subjective complaints. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999) ("Citing the conflict between [the plaintiff's] testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined [the plaintiff's] credibility."); *Burt v. Colvin*, 611 Fed. Appx. 912, 914 (9th Cir. 2015) ("[T]he ALJ properly discredited Burt's testimony because it was contradicted by the medical record.")

Here, the ALJ cited to multiple inconsistencies between Plaintiff's testimony and the medical record. For example, the ALJ noted Plaintiff testified she is unable to lift five pounds, cannot grasp objects, and has difficulty reaching her arms over her head. (AR 23.) However, the ALJ also noted that Dr. Stoltz's physical examination found Plaintiff had full range of motion in

all extremities as well as in her neck and back, normal strength in all her extremities, and only slightly reduced grip strength. (AR 24 (citing AR 446–48).) Plaintiff does not dispute Dr. Stoltz's physical examination findings or argue that they do not contradict her testimony. Additionally, despite Plaintiff's testimony of debilitating pain, the ALJ observed that the only abnormality noted during Plaintiff's physical examination at her August 2013 emergency room visit, was tenderness in her foot. (AR 24 (citing AR 426–28).) Accordingly, the Court finds the ALJ properly discredited Plaintiff's testimony regarding her physical impairments based on contradictions between the medical record and Plaintiff's testimony. *Lane v. Colvin*, No. 2:14–cv–02391–AC, 2016 WL 1073259, at *8 (E.D. Cal. Mar. 18, 2016) (finding "the cited medical evidence adequately supports the ALJ's credibility determination" where the ALJ's decision "point[ed] specifically to reports that cast doubt upon [the claimant's] claims"); *White v. Colvin*, No. 1:15–cv–01367–JLT, 2017 WL 387244, at *9 (E.D. Cal. Jan. 27, 2017) ("Because the ALJ identified inconsistencies between the medical record and Plaintiff's testimony, the objective medical record supports the adverse credibility determination.") (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)).

Plaintiff contends that "an individual's allegations cannot be rejected because the available objective medical evidence does not substantiate the claimant's statements." (Doc. 10 at 18 (quotations and alterations omitted).) Plaintiff is correct that her allegations of pain and physical limitations cannot be rejected simply because of the absence of objective medical evidence to support it. 20 C.F.R. §§ 416.929(c)(2), 404.1529(c)(2); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc) ("[T]he adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence[.]"). However, "the ALJ may consider and rely upon objective medical evidence and physician opinions that **contradict plaintiff's subjective testimony**." *Branson v. Berryhill*, No. 2:15–cv–2675 AC, 2017 WL 1179160, at *6 (E.D. Cal. Mar. 30, 2017) (emphasis added) (citing *Carmickle*, 533 F.3d at 1161)); *see also Ferris v. Colvin*, No. 2:14–cv–02569–AC, 2016 WL 1117771, at *8 (E.D. Cal. Mar. 22, 2016) (finding the ALJ erred by relying on the claimant's activities of daily living to discredit the claimant's testimony,

but the error was harmless because of inconsistencies between the testimony and medical record). The ALJ properly relied on portions of the medical record that contradicted Plaintiff's testimony, and there is no error in it.

### b. Conservative Medical Treatment

The ALJ's credibility assessment properly relied on Plaintiff's overall conservative medical treatment record. *See* 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3); *see also* Social Security Ruling 16-3p (Mar. 28, 2016) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); *Casey H., v. Berryhill*, No. EDCV 18-0116-JPR, 2018 WL 5629303, at *13 (C.D. Cal. Oct. 29, 2018) ("That Plaintiff essentially was treated only with pain medication and did not pursue physical therapy, specialized pain management, or injections was a clear and convincing reason for discrediting his allegations of disabling pain.").

Here, Plaintiff does not dispute that her treatment record is conservative. Instead, Plaintiff contends the ALJ mischaracterized the record by stating Plaintiff was never referred to a spine specialist and the ALJ erred by relying on the absence of any surgical intervention as evidence of Plaintiff's lack of disability. (Doc. 10 at 20.) Defendant acknowledges that the ALJ improperly stated Plaintiff was never referred to a spine specialist, but even considering the existence of the referral, Defendant notes Plaintiff still did not seek any further treatment. (Doc. 17 at 11.) Indeed, the record contains no evidence that Plaintiff visited a spine specialist or what a spine specialist recommended, and Plaintiff makes no allegations that she sought further treatment. While Plaintiff properly states that she cannot be discredited for failing to seek more aggressive treatment where none exist (Doc. 10 at 20 (citing *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010)), this rule does not apply because although non-conservative treatment options did exist, there is no evidence Plaintiff pursued them. Specifically, Plaintiff could have followed through with Dr. Medeiros' referral to a spine specialist, but she offers no explanation for not doing so. Accordingly, the ALJ did not err by finding that if Plaintiff's symptoms were as severe as she testified, she would have sought additional treatment. *Johnson*, 60 F.3d at 1434 (finding the

claimant's conservative treatment record "suggest[ed] a lower level of both pain and functional limitation" and "if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time").

### c. Activities of Daily Living

The ALJ erred in his consideration of Plaintiff's activities of daily living. Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment."). Here, the ALJ found Plaintiff's activities of daily living both conflict with her testimony and show her level of functioning is transferable to a work environment. However, the ALJ failed to support either finding with substantial evidence.

First, the ALJ concluded Plaintiff's alleged impairments are inconsistent with her activities of daily living. The activities of daily living identified by the ALJ as conflicting with Plaintiff's testimony include Plaintiff's ability to manage her personal care with difficulty, use public transportation, and shop in stores. (AR 24.) The ALJ noted Plaintiff testified she experiences pain in her neck, back, and arms, and has difficulty completing tasks with her hands. (AR 24.) The ALJ also noted Plaintiff testified she is unable to lift five pounds, has difficulty grasping objects, and could stand for thirty minutes. (AR 24.) However, the ALJ failed to explain how Plaintiff's ability to shop in stores or use public transportation contradicts Plaintiff's testimony regarding her ability to lift weight, grasp objects, or stand without sitting for thirty minutes. Instead, in a conclusory fashion, the ALJ simply stated that Plaintiff's alleged impairments do not interfere with her activities of daily living. (AR 24.) Further, the ALJ noted the record shows Plaintiff manages her personal care with difficulty, which is in fact consistent with her testimony that she has difficulty washing her hair in the shower due to pain when she reaches over her head, and bolsters her testimony rather than undermines it. Therefore, the ALJ erred by failing articulate how Plaintiff's testimony was inconsistent with her activities of daily living. *Pickard v. Comm'r*

*of Soc. Sec.*, No. 2:16–cv–1545–JAM–CMK, 2018 WL 1211061, at *4 (E.D. Cal. Mar. 8, 2018) (finding the ALJ erred "because the activities described are not inconsistent with plaintiff's claimed limitations") (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)); *see also Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("That [Plaintiff] could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period.").

Second, the ALJ found that Plaintiff's "admitted activities of daily living support the above-mentioned RFC." In other words, the ALJ is suggesting that Plaintiff's activities of daily living are transferable to a work setting because they support his RFC assessment. However, the ALJ fails to explain how his RFC assessment—which would require Plaintiff to lift up to fifty pounds and stand for six hours a day—is supported by Plaintiff's admitted activities of daily living. The only activities identified by the ALJ as being admitted by Plaintiff include managing her personal care with difficulty, using public transportation, and shopping in stores. (AR 24.) These activities do not require Plaintiff to lift fifty pounds or stand for six hours as the ALJ's RFC determination would require Plaintiff to do, and are consistent with Plaintiff's inability to perform medium work on a sustained basis. Therefore, the ALJ erred by finding Plaintiff's activities of daily living supported his RFC assessment. *See Garrison*, 759 F.3d at 1016 (finding the ALJ erred in her assessment of the plaintiff's credibility where the plaintiff's activities of daily living were "consistent with an inability to function in a workplace environment" and warning ALJs to be "especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often consistent with doing more than merely resting in bed all day").

In discrediting Plaintiff's testimony, the ALJ also stated:

Although the claimant has described daily activities, which are limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition as it is managed by medication.

(AR 24–25.) Defendant ignores this language in the opposition brief, but the Court notes several courts in the Ninth Circuit have commented on the use of the same boilerplate language and found it does not provide a clear and convincing reason to discredit a claimant's testimony. *Dadian Wallis v. Berryhill*, No. 1:15-CV-01670-JLT, 2017 WL 527895, at *9 (E.D. Cal. Feb. 9, 2017) (explaining that "simply because a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance") (quoting *Fisher v. Colvin*, No. 1:13–cv–01261–SKO, 2015 WL 1442064, at *20 (E.D. Cal. Feb. 20, 2015)); *McKim v. Astrue*, No. 11CV5815-RBL-JRC, 2012 WL 5250096, at *5 (W.D. Wash. Sept. 4, 2012) (rejecting similar language and noting the "ALJ cannot rely on general findings, but must specifically identify what testimony is credible and what evidence undermines the claimant's complaints") (quotations and citations omitted); *Altamirano v. Colvin*, No. ED CV 12–1862–PLA, 2013 WL 3863956 (C.D. Cal. July 24, 2013) (noting that "objective verifiability to a reasonable degree of certainty is not a requirement imposed by law"). Accordingly, because the ALJ failed to make specific findings regarding how Plaintiff's testimony contradicted her activities of daily living or how her activities of daily living were transferable to a work setting, Plaintiff's activities of daily living are not a clear and convincing reason for discrediting her testimony.

Even though the ALJ erred in his analysis of Plaintiff's activities of daily living, Plaintiff's conservative treatment record and the inconsistency between her testimony and the objective medical record provide independent clear and convincing reasons to discredit Plaintiff's testimony. Specifically, Plaintiff's credibility was weakened by her apparent failure to seek more aggressive treatment despite referrals to a spine specialist and objective findings upon physical examination that her symptoms were not as severe as she alleged. (*See* AR 24–25.) Accordingly, any error is harmless and reversal is not warranted. *See Carmickle*, 533 F.3d at 1162 ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal.") (alterations in original) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *Wells*, 2017 WL 3620054, at *10 ("While

the ALJ erred in providing one invalid reason for the credibility finding . . . that error was harmless, as substantial evidence still supports the ALJ's credibility determination notwithstanding the single errant rationale.").

**B.     The ALJ's Consideration of the Medical Opinions.**

### 1.      Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. §§ 416.927(b) and (c) (applying to claims filed before March 27, 2017), 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physicians); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physicians). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn*, 495 F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of

a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[11] except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel*, 172 F.3d at 1114 (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

**2. The ALJ Did Not State Sufficient Reasons for Rejecting Dr. Mariano's Opinion.**

Dr. Mariano treated Plaintiff on a monthly basis beginning in November 2008 and provided an opinion on October 13, 2015, regarding Plaintiff's capacity to work. (AR 524.) Dr. Mariano opined Plaintiff could sit for four hours in a normal eight-hour day and stand and/or walk four hours in a normal eight-hour day. (AR 526.) Dr. Mariano further opined Plaintiff could lift and carry up to five pounds occasionally, but never more than five pounds, and Plaintiff had significant limitations in reaching, handling, and fingering. (AR 526–27.)

---

[11] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Mariano's opinion is contradicted by the medical opinions of consultative examiner Dr. Stoltz and Disability Determination Services non-examining consultants Drs. Bugg and Pham. In contrast to Dr. Mariano's opinion, these three doctors did not impose any specific limitations on Plaintiff's ability to work. (AR 99, 111, 449.) Since Dr. Mariano was a treating physician, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting his opinion.

In discrediting Dr. Mariano's opinion, the ALJ gave "minimal weight" to Dr. Mariano's opinion because:

> it is not consistent with the entirety of the record. For example, physical examination showed only minor findings that included normal gait, normal upper and lower extremity tone and strength, no spasms and no tenderness in claimant's neck or back, but there was slight torticollis, left ankle tenderness with slight swelling and some decreased range of motion. (8F/20; 14F/8; 15F/1) Additionally, diagnostic imaging and physical examinations showed only mild carpal tunnel findings, as noted above. Thus, Dr. Mariano's extreme limitations are not supported. Additionally, it appears Dr. Mariano based his opinion upon claimant's subjective complaints, rather than upon the objective findings, thus is a sympathetic opinion.

(AR 36.) In sum, the ALJ rejected Dr. Mariano's opinion for two reasons: 1) it was inconsistent with the entirety of the record, and 2) it appeared to be based on Plaintiff's subjective complaints.

An ALJ may properly discount a treating physician's opinion that is inconsistent with the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, however, the ALJ only cited three pages of the record in support of his conclusion that Dr. Mariano's opinion was "not consistent with the entirety of the record," and none of pages cited by the ALJ support his conclusion.

First, and most significantly, the ALJ stated that the objective medical showed no spasms or tenderness in Plaintiff's neck. (AR 25 (citing AR 521).) However, Dr. Mariano's treatment notes from the April 14, 2016, appointment cited by the ALJ, actually state the following: "NECK: cervical tenderness and spasm of the [sic] cervicalmusclesmore on the right than the left, Patient

with slight torticollis." (AR 521.) Dr. Mariano made similar findings at Plaintiff's next appointment on May 16, 2016. (AR 523 ("spasm more on the left of the neck").) Thus, while the ALJ relied on the absence of neck spasms or tenderness as medical evidence contradicting Dr. Mariano's opinion, the record shows Dr. Mariano observed cervical spasms and tenderness, which supports his opinion.

Next, the ALJ also referenced Dr. Medeiros' treatment notes from March 19, 2015, noting Plaintiff's normal upper and lower extremity tone and strength. (AR 24 (citing AR 517).) However, the treatment notes do not reflect completely normal extremity tone and strength as the ALJ suggests. Specifically, the treatment notes show Dr. Medeiros observed "giveaway weakness in both triceps" and bilateral atrophy in the muscles in the hand that flex the thumb. (AR 517.) Dr. Medeiros' treatment notes also show impaired sensation in Plaintiff's upper extremities. (AR 517 (finding the sensation in Plaintiff's left and right upper extremities to be "intact except for, light touch is impaired and, pin prick is impaired").) Additionally, the ALJ cited treatment notes from Plaintiff's emergency room visit in August 2013. (AR 25 (citing AR 427).) However, these treatment notes are devoid of any of the findings cited in the ALJ's opinion as examples in the record inconsistent with Dr. Mariano's opinion. In other words, the treatment notes from the emergency room visit referenced by the ALJ do not indicate Plaintiff's extremity strength or tone was normal, or that she had no spasms or tenderness in her back or neck, or that her gait was normal. Instead, the musculoskeletal findings of the physical exam only state that Plaintiff exhibited tenderness in her right foot and she was positive for arthralgias (i.e., joint pain) in her foot. (AR 427.) Thus, the ALJ erred by citing Plaintiff's normal extremity tone and strength as evidence in conflict with Dr. Mariano's opinion, because the portions of the record cited by the ALJ reflect at least partially limited extremity strength and other irregular findings in Plaintiff's extremities.

The ALJ also erroneously stated diagnostic imaging and physical examinations "showed only mild carpal tunnel findings." (AR 25.) The ALJ did not cite to any specific examinations or diagnostic images, but instead referred to his previous summary "as noted above." (AR 25–26.) However, Plaintiff's physical examinations were not normal except for findings of mild carpal

tunnel syndrome, as the ALJ states. Rather, the physical examinations revealed neck spasms and tenderness, atrophy in Plaintiff's hand muscles, and impaired sensation in her arms. (AR 517, 521.) Moreover, the diagnostic imaging summarized by the ALJ revealed moderate to severe bilateral foraminal stenosis (AR 24 (citing AR 513)), which Dr. Medeiros opined showed possible radiculopathy at the C5 through C7 levels. (AR 512.) Following his review of the MRI, Dr. Medeiros indicated he would refer Plaintiff to a spine specialist, suggesting the images showed more than normal or mild findings. (AR 512.) The ALJ also summarized x-rays of Plaintiff's cervical spine, performed in August 2014, showing degenerative changes since 2007 and reversal of the normal lordotic curve, which is the normal inward curvature of the lumbar and cervical regions of the spine. (AR 24 (citing (AR 502).) Accordingly, the ALJ erred by finding the record does not support Dr. Mariano's opinion and not accurately characterizing the medical record. In fact, some portions of the record cited by the ALJ as contradicting Dr. Mariano's opinion, actually support his opinion—such as the presence of spasms and tenderness in Plaintiff's neck, atrophy of the muscles in her hands, arthralgias in her foot, the MRI compelling Dr. Medeiros to refer Plaintiff to a spine specialist, and the x-rays showing degenerative changes in Plaintiff's cervical spine.

The ALJ also discredited Dr. Mariano's opinion because it appeared to the ALJ that the opinion was based on subjective complaints rather than objective findings. (AR 26.) "An ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that have been properly discounted." *Peo v. Comm'r of Soc. Sec.*, No. 1:16–cv–00834–LJO–SAB, 2017 WL 3575274, at *13 (E.D. Cal. Aug. 18, 2017) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (finding that an opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted")). Here, however, the ALJ failed to provide any support for his conclusion that Dr. Mariano's opinion is based on subjective complaints, rather than objective evidence. As Plaintiff points out, Dr. Mariano specifically stated that his opinion was based on MRI findings and clinical observations. (Doc. 10 at 12 (citing AR 524–25).) Thus, the ALJ failed to identify

substantial evidence—or any evidence at all—in support of his conclusion that Dr. Mariano provided an opinion based only on Plaintiff's subjective complaints.

Defendant responds by asserting that "[d]ue to the overall minimal objective findings, the ALJ reasonably inferred that Dr. Mariano's assessment in the disability questionnaire were [sic] primarily based on Plaintiff's subjective reporting—rather than his actual assessment." (Doc. 17 at 6.) Defendant cites the Ninth Circuit's opinions *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453 (9th Cir. 1995) and *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989). (Doc. 17 at 6.) However, both cases emphasize that the physician's opinion may be disregarded only if the claimant's subjective complaints have "already [been] properly discounted." *Flaten*, 44 F.3d at 163–64 (citing *Fair*, 885 F.2d at 605). Here, the ALJ failed to identify the subjective complaints on which Dr. Mariano based his opinion, making it impossible to determine whether those subjective complaints were properly disregarded by the ALJ. Moreover, to the extent the ALJ inferred Dr. Mariano's opinion was based on Plaintiff's subjective complaints because the available objective evidence was unclear, the ALJ was obligated to further develop the record, including clarification of Dr. Mariano's illegible handwriting and other illegible portions of the record. *Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting *Smolen*, 80 F.3d at 1288); *Williams v. Astrue*, No. ED CV 08-549-PLA, 2010 WL 431432, at *7 (C.D. Cal. Feb. 1, 2010) ("[T]he ALJ's finding that Dr. Porcelli's treatment notes were unclear or illegible . . . should have triggered his duty to clarify those ambiguities."). Thus, rather than inferring Dr. Mariano's opinion was based on unspecified subjective complaints because of the minimal objective evidence in the record, the ALJ erred by failing to identify the subjective complaints on which Dr. Mariano based his opinion and properly discount those complaints.

In sum, the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for giving "minimal weight" to the opinion of Plaintiff's examining physician, Dr. Mariano. That error was not harmless because it was not "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle,* 533 F.3d

at 1162). The ALJ's RFC assessment was that Plaintiff has the RFC to perform the full range of medium work. (AR 23.) Using the RFC, the VE testified that Plaintiff could work as a retail store bagger, hospital cleaner, and counter supply worker. (AR 58.) A reasonable ALJ fully crediting Dr. Mariano's opinion, particularly regarding Plaintiff's ability to lift and carry objects and use her arms and hands for reaching, handling, and fingering, could have concluded that Plaintiff could not perform any of these occupations. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding that the ALJ's error in failing to consider lay testimony about limitations was not harmless where a reasonable ALJ could conclude those limitations precluded employment).

## C. The ALJ's Error Warrants Remand for Further Proceedings.

When the Court finds that the ALJ committed prejudicial error, it possesses the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Generally, if the Court finds that the ALJ's decision was erroneous or not supported by substantial evidence, the Court must follow the "ordinary remand rule," meaning that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). A remand for an award of benefits is inappropriate where the record has not been fully developed or there is a need to resolve conflicts, ambiguities, or other outstanding issues. *Id.* at 1101.

Where, as here, an ALJ fails to "give sufficiently specific reasons for rejecting the conclusion of [a physician]," it is proper to remand the matter for "proper consideration of the physician['s] evidence." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988); *see also Nguyen v. Chater*, 100 F.3d 1462, 1466–67 (9th Cir. 1996) (remanding for further proceedings where ALJ failed to "set forth specific, legitimate reasons" for crediting opinion of non-examining consultant over that of examining psychologist). Accordingly, the Court exercises its discretion and remands this matter for further proceedings to allow the ALJ to reconsider the medical evidence, particularly Dr. Mariano's opinion, and whether there are specific and legitimate reasons in the record to reject it. *See McAllister*, 888 F.2d at 603 (remanding to allow the Commissioner to review the record and provide legally sufficient reasons for rejecting the treating physician's report

and, alternatively, permitting the Commissioner to award benefits). On remand, the ALJ shall properly assess the medical evidence as a whole, determine Plaintiff's RFC, and proceed through Steps Four and Five to find what work, if any, Plaintiff is capable of performing.

## VI. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Ronnie Lea Byrd and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**January 2, 2019**__ _____ /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE